IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JAMES ANTHONY PRIMUS, | ) ) | C/A No. 4:07-2652-PMD-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| WARDEN A. J. PADULA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, James Anthony Primus ("petitioner/Primus"), a pro se prisoner, seeks habeas relief pursuant to 28 U.S.C. 2254. This matter is before the Court on the respondent's motion for summary judgment (document # 15) and the petitioner's motion to appoint counsel (document # 21).[1]

The petitioner filed this petition for a writ of habeas corpus on July 30, 2007. On October 25, 2007, the respondent filed a motion for summary judgment, along with supporting memorandum and exhibits. The undersigned issued an order filed October 26, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. On November 16, 2007, the petitioner filed a response to the respondent's motion for summary judgment.

_____

[1]This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

# I.  PROCEDURAL HISTORY

The petitioner is currently housed in the Lee Correctional  Institution ("LCI") of the South Carolina Department of Corrections (SCDC).  In September 1997, the petitioner was indicted for criminal sexual conduct ("CSC") in the first degree, kidnapping, possession of crack cocaine, and burglary in the second degree. (App. 500-07.)    Attorney William L. Runyon, Jr., represented the petitioner on these charges.  Between August 31-September 1, 1998, the petitioner was tried by a jury on the CSC, kidnapping, and burglary charges with the Honorable Luke N. Brown, Jr., presiding.  The jury convicted him of assault and battery of a high and aggravated nature (ABHAN) and kidnapping. Judge Brown sentenced him to thirty (30) years imprisonment for the kidnapping and ten (10) years for the ABHAN, to run consecutively.    The petitioner timely filed a notice of appeal.

Chief Attorney Daniel T. Stacey and Assistant Appellate Defender Katherine Carruth Link represented the petitioner on appeal to the South Carolina Court of Appeals.  On October 21, 1999, the petitioner filed his final brief raising the following issue for review:  "Whether the court erred when it permitted the solicitor to argue that appellant had not produced witnesses to support his alibi, where the defense adduced no evidence and the comment was prejudicial?" (App. 332.)   On July 10, 2000, the South Carolina Court of Appeals reversed the petitioner's convictions in State v. Primus, Op. No. 3214 (S. C. Ct. App. filed July 10, 2000).  (App. 361-72.)  The State filed a petition for rehearing on July 24, 2000.  (App. 373-83.)  On August 17, 2000, the South Carolina Court of Appeals denied the rehearing petition. (App. 384.)

 On September 15, 2000, the State filed a petition for a writ of certiorari with the South Carolina Supreme Court raising the following issues:

2

1. Did the Court of Appeals err in finding it was improper for the Assistant Solicitor to comment on Respondent's failure to call his uncle as a witness?

2. Did the Court of Appeals err in denying State's motion to supplement the record on appeal?

3. Did the Court of Appeals err in finding the trial court committed reversible error in failing to sustain Respondent's objection to the Solicitor's comments and failing to immediately give a curative instruction?

4. Did the Court of Appeals err in concluding the trial court's jury charges on Respondent's rights not to testify or put up any evidence did not cure the error of allowing the Solicitor's improper comments?

5. Did the Court of Appeals err in concluding the possibility of prejudice from the Solicitor's comment mandated reversal of the conviction under a harmless error analysis?

(Pet. for Writ of Cert. 3.)  On February 9, 2001, the South Carolina Supreme Court granted certiorari on these issues and directed the parties to brief an issue related to subject matter jurisdiction.   The State then filed a brief discussing the following issues:

1. Did the trial court have subject matter jurisdiction in this case as Respondent was indicted for first-degree criminal sexual conduct but was convicted of assault and battery of a high and aggravated nature?

2. Did the Court of Appeals err in finding it was improper for the Assistant Solicitor to comment on Respondent's failure to call his uncle as a witness when Respondent made a voluntary statement relating his alibi, and specifically posed questions on cross-examination that elicited and supported his alibi defense?

3. Did the Court of Appeals err in denying State's motion to supplement the Record on Appeal when the requested portions were relevant to the curative instruction analysis and harmless error analysis employed by the Court?

4. Did the Court of Appeals err in finding the trial court committed reversible error in failing to sustain Respondent's objection to the Assistant Solicitor's comment on alibi and  immediately give a curative instruction?

3

5. Did the Court of Appeals err in concluding the trial court's jury charges did not cure any error in allowing the Assistant Solicitor's comment on alibi?

6. Did the Court of Appeals err in concluding the Assistant Solicitor's comment on alibi was not harmless error analysis?

On June 8, 2001, the petitioner also filed a brief.  On May 20, 2002, the South Carolina Supreme Court affirmed the decision of the Court of Appeals in part and reversed it in part in State v. Primus, 564 S.E.2d 103 (S.C. 2002)(Pleicones, J., concurring in part and dissenting in part).  Specifically, the South Carolina Supreme Court found that the trial court had subject matter jurisdiction over the ABHAN conviction because it concluded, as a matter of state law, that ABHAN is a lesser included offense of first degree CSC.  *Id* at 105-06.  The court further held that the Court of Appeals had correctly held the assistant solicitor's comment concerning the petitioner's failure to produce his uncle as a witness was improper.  *Id*. at 106-08.  However, the court concluded that any error was harmless beyond a reasonable doubt.  *Id*.  at 108-09.[2]  The South Carolina Supreme Court sent the remittitur down on June 5, 2002.

On July 10, 2002, the petitioner filed a pro se application for post-conviction relief ("PCR") raising twelve allegations of ineffective assistance of counsel, quoted verbatim:

> 1. Trial counsel was ineffective for failing to object to the prosecution officer presenting D.N.A. evidence just hours before trial. Tr. P. 235 Line 4-21.

---

[2]Justice Pleicones wrote a separate opinion, concurring in part and dissenting in part. He disagreed with the majority's analysis on the subject matter jurisdiction claim and stated he would hold that ABHAN is not a lesser-included offense of first degree CSC and would have vacated the petitioner's ABHAN conviction.  However, he agreed that the assistant solicitor's argument did not warrant a new trial.  564 S.E.2d at 110.

4

2.  Counsel failed to object to the prosecution officer presenting the D.N.A. just hour before trial. Counsel denied the applicant the opportunity to preserve this issue for the Appellate Court Review.

3. Trial Counsel was ineffective when he failed to file a Brandy Notion to obtain any and all exculpatory evidence: Brady v. Maryland 373 US.83 (1983).

4. Trial Counsel was ineffective where he failed to conduct a legal, factual or meritorious investigation of applicant's case.  Bertha Robinson v. State, ___.S.E.2d __ ,  S.C. OP. No. 23642 April 27, 1992) Frederick Jetter v. State , ___ S.E. 2d __, S.C. OP. No.1992 Cothill Tate v. State S.E. 2d S.C. OP. No. April 1992.

5. Trial counsel was ineffective when he failed to request the trial court to excused for cause the following voir dir Jurors Tr. p. 13-14 Jim Rice Juror (111) he knew Sheriff Ray Rush from a church men's group. His full name is James S. Rice. Tr. p. 12-22 Juror 152 Linda Huffman. Tr. p. 10-22 Juror 101 Carol Moore. Samuel Joyner Trip. 20-23 Juror 75. The question was never ask by court whoever served on a Jury before: Mr. Joyner served before. Linda Huffman contributor to Mothers Against Drunk Driving. Carol Moore previously used the Assistant Solicitor Mr. Robbins.

6.  Applicant contend that trial counsel's failure to object to Jurors James Rice, Linda Hurrman, Carol Moore, and Samuel Joyner from remaining on the voir dire pool failed to preserve the issue for appellant review.  Pike v. South Carolina Department of Transportation, 506 S.E. 2d 516, 322 S.C. 605. Reh. Den.

7.   Counsel failed to call Theodore James as a witness relevant to case.

8. Applicant was denied a fair and impartial trial by trial counsel's failure to object and to challenge Voir dire Jurors James S. Rice, Linda Huffman, Carol Moore and Samuel Joyner. State v. Power 501 S.E. 2d 116, 331 S.C 37. Reh. Den (1998).

9. Counsel failed to call Joe Hodges as a witness to alibi for defense.

10. Trial Counsel failed according to rule 5. (c) to file a notice of alibi by defendant.

5

11. Trial counsel failed accordingly to rule 7 (6) to file a notice for continue in order to view the belated evidence which was the D.N.A. that was brought in by prosecutor's office.

12. Applicant contend that he never had a chance to view the D.N.A. that was presented into evidence by the prosecutor until August 31, 1998, and he didn't get a chance to view it then. Tr. p. 235. Line 1-19.

(App. 385-91.)    On June 24, 2004, the petitioner filed an amendment to his PCR application challenging the trial court's subject matter jurisdiction because (1) the prosecutor was the only witness before the Grand Jury, in contravention of state court precedent; and (2) the prosecutor failed to comply with the requirements of Rule 3, SCRCrim.P.

On November 16, 2004, the Honorable James C. Wiiliams, Jr., held an evidentiary hearing into the matter .  The petitioner was present at the hearing, and represented by attorney Rutherford Smith. On December 21, 2004, Judge Williams denied the petitioner relief and dismissed his PCR application with prejudice.  The petitioner filed a timely notice of appeal.

Acting Deputy Chief Attorney Wanda H. Haile represented him on appeal. On July 5, 2005, she filed a Johnson[3] petition and a motion to be relieved as counsel. The only issue presented was: "Trial counsel erred in failing to call alibi witnesses in support of petitioner's  alibi defense." (Johnson Pet. at 2.)  On April 4, 2007, the South Carolina Court of Appeals denied certiorari and granted counsel's motion to be relieved.  The remittitur was sent down on April 24, 2007.

## II.  FACTS

The following facts are set forth in State v. Primus, 535 S.E.2d 152 (S.C.App. 2000):

---

[3]Johnson v. State, 364 S.E.2d 201 (S.C. 1988)(discussing the procedures for filing meritless appeals in PCR cases pursuant to Anders v. California, 386 U.S. 738 (1967)).

Primus was charged with first degree criminal sexual conduct, second degree burglary and kidnapping for events which occurred on July 13, 1997. The State presented evidence that Primus, armed with a rusty and pointed metal object, forced Nikki Scott (Victim) into an abandoned house where he raped her.

The victim testified that on July 12 she saw Primus at a cookout at a gas station in St. George, where the victim drank about three beers. Around 10:00 p.m., Primus gave the victim a ride from the station to a club in Bowman, where she drank about five or six beers. The victim left the club at 2:00 a.m. and was driven home by her boyfriend. At 4:30 a.m., she left her house "with another person" and returned home before 6:30 a.m.

Around 7:00 a.m. on July 13, Primus drove to the victim's house and invited her to ride with him to his uncle's house. The victim agreed to accompany Primus and voluntarily got into his car. She had known Primus for about seven years and had even been on one date with him in the past.

According to the victim, Primus told her that he was going to get some gas money from his house, but instead drove to an abandoned house and demanded she get out of his car. When the victim refused, Primus threatened her with a pointed, rusty weapon and pulled her out of the car. He pushed the victim inside the house where he ordered her to undress. Primus had begun assaulting her when the victim "kneed him" and escaped through a window.

Outside the house, the victim attempted to attract the attention of a passing truck but was forced to the ground by Primus. While on the ground, she found a stick which she used against her assailant, "jab[bing]" him in the chest and gouging him in the eye. She then ran naked and bleeding to a nearby house. The victim immediately claimed Primus raped her. She repeated the same story to police and medical personnel. In addition to naming her attacker, the victim described his car as a red convertible which he cranked with a screwdriver instead of a key.

While searching the abandoned house, police found the weapon the victim had described. Her clothing was discovered inside the house where she testified Primus forced her to undress. A broken window matched her description of how she escaped the home. The police uncovered a latent fingerprint matching Primus' right index finger on the inside doorknob of the house.

Hubert and Toni Shieder, who lived at the home where the victim sought help, described her as naked, bleeding, and very upset. The Shieders testified the victim immediately declared she had been raped. Officers found on the Shieders' porch the stick the victim used to defend herself. The victim's blood was found on the middle of the stick. On one end of the stick, blood consistent with the victim's

DNA was found. Blood inconsistent with the victim's DNA but consistent with Primus' DNA was located on the other end of the stick. Because of the limited amount of blood on the stick, there were interpretable results for only two of the eight sites normally tested. Thus, one person in every 174 people would have the same genetic markers found in that blood. The test results "could not exclude James Primus as a donor."

Later on the day of the crimes, police discovered a red convertible abandoned on the side of the highway. The car, which was registered to Primus, had a "punched ignition," which indicated a screwdriver may have been used to crank it. When the police arrested Primus, he had several scratches on his body and a gouge mark on his eye matching the wound the victim said she inflicted on her attacker.

At trial, Primus did not testify or call witnesses, but the State introduced testimony he offered an alibi to police when questioned. Specifically, Primus told police he had eaten breakfast at 7:00 a.m. at a Shoney's restaurant and visited his uncle, Joe Hodges, during the time frame of the alleged crimes. He stayed at his uncle's house about three hours. Primus claimed that after he visited his uncle, his car broke down on the side of the road. He accepted a ride from a stranger into town where he played basketball with a guy he had never met before named David. Primus asserted "this was the first time they ever played basketball together, didn't know him, and didn't know where he lived." Primus explained he received his wounds while playing basketball. As for Primus' car, an officer, who remembered driving in the area at approximately 10:00 a.m. on the morning of the crimes, stated there was no red convertible on the side of the highway.

The record reflects the following exchange occurred during the State's closing argument:

> [Assistant Solicitor]: Primus's statement has to admit a few facts when he talked to the police he had to admit a few things, had to come up with some reason. Of course it wasn't because I attacked [Victim] and dragged her into an abandoned house and raped her, no, no, no, no. It was because I was playing basketball. He also had to admit that he was driving around. He never went to bed. He told you that. He was up and at them all night long that night. We know that was true because he was at [Victim's] house at 6:30 or 7:00 and taking her out to Gum Branch Road and raping her all during this period.
>
> And the crucial period when Detective Bills told you he was most interested in was this Shoney's and Uncle Joe Hodges' house. Of course, you can't hold the fact that Mr. Primus didn't present any

8

evidence against him, but don't you think that would have made his alibi a lot stronger if Joe Hodges, his own uncle, had come to court and said, oh, he couldn't have been on Gum Branch Road raping this woman because he was at my house in Corey Woods?

[Defense Counsel]: I have an objection, your Honor. We don't have to bring those people to court, Judge.

The Court: I'll be telling you later on, I give each attorney a lot of leeway in making their summation to you and I'll be telling you the defendant doesn't have to do anything, doesn't have to prove anything, but I'll be explaining more to you later.

Go ahead, Solicitor.

After closing arguments, the trial court charged the jury as to the applicable law, including an instruction on Primus' right not to testify or present evidence in his defense.

*Id*. at 155-156 .

### III. PETITIONER'S GROUND FOR RELIEF

On July 30, 2007, the petitioner filed this habeas petitioner raises the following grounds,

verbatim:

**GROUND ONE:** Did the trial Court err in permitting the assistant solicitor to comment on primus failure to produce evidence in his defense?
**SUPPORTING FACTS:** No amount of curative instruction could erase the prejudicial effect the solicitors comment had on the jury.

**GROUND TWO:** Did the trial Court have subject matter jurisdiction to convict Primus of Assault and battery of a high and aggravated Nature?
**SUPPORTING FACTS:** Primus was convicted under an indictment for Criminal Sexual conduct which was stated that ABHAN is a lesser included offense. ABHAN is an anomaly in S.C law. The elements of these offenses does not make one or the other a lesser included offense of each.

**GROUND THREE:** Did the Court of appeals err when considering Solicitors statements about Primus uncle as an alibi witness
**SUPPORTING FACTS:** Primus failure to call his uncle as a witness should not have shifted the burden of proof on defendant. Solicitors comment removed the

9

presumption of innocense from the defendant and gave the jury the opportunity to infer guilt. Once implanted in the jurors mind, prejudice is inescapable.

**GROUND FOUR:** A Latter decision by the Supreme Court in State v Gentry overruled the subject matter jurisdiction and indictment in Primus.

**SUPPORTING FACTS:** This latter decision concerning subject matter jurisdiction and the sufficiency of indictment in Primus case involving the Abhan was effected by this decision. Primus contends that a charge for Abhan resulting in conviction should not be tried under an indictment for Criminal Sexual Conduct 1st degree.

Additionally, in his attachments, the petitioner raises the following grounds:

1. Trial Counsel was ineffective for failing to object to the prosecution when it presented D.N.A evidence just hours before trial. This event limited defendants opportunity to prepare himself for its admission through evidentiary hearing or suppression hearing.

2. Counsels (Trial) failure to object to the belated D.N A evidence did not preserve this issue for appellate review.

3. Trial Counsel was ineffective for failing to file a Brady motion for all exculpatory evidence. The D.N.A is one example case in point.

4. Trial Counsel was ineffective when he failed conduct a legal, factual or Meritorious investigation of applicant's case. All witnesses, should not have been excluded as part of trial strategy.

5. Trial Counsel was ineffective when he failed to request the trial Court to excuse for cause the following members of the jury pool: Jim Rice No 111, Linda Huffman 152, Carol Moore 101, Samuel Joyner 75. These members had affiliations with certain Law officials and the organization MADD, Mothers against drunk driving.

6. Counsels failure to object during the voir dire, failed to preserve this issue for appellate review.

7. Counsel failed to call Theodore James as a witness. The testimony of this witness may have offset the victim in this case credibility.

8. Counsel failed to call Joe Hodges as an alibi witness for the defendant.

9. Trial Counsel failed to file a notice of alibi for defendant.

10

10.  Counsel failed to request an evidentiary hearing on the late entrance of DNA evidence offered by the State.

11.  Counsel failed to preserve for review belated D.N.A evidence.

12. Counsel failed to request a mistrial after the trial Courts attempt at a curative instruction. He accepted things as they were. This is ineffectiveness.

13. During prosecutions closing remarks, Counsel failed to substantiate whether his objection was sustained or over-ruled, when there was no evidence of a clear and plain ruling. This is ineffective assistance of Counsel and a Sixth amendment violation.

14. The assistants error cannot be considered harmless. Prejudice to the jury is inescapable.

15. The Courts curative instruction and his ruling on the defense attorneys objection was ambiguous.

In his memorandum opposing the respondent's motion for summary judgment, however, the petitioner states that these "alleged fifteen additional grounds are merely points highlighting the four major grounds [set out in his petition];  they mainly consist of ineffective assistance of counsel." (Pet'r's Mem. Opp. Summ. J. Mot. at 1.)

## IV.  SUMMARY JUDGMENT

As stated above, on October 25, 2007, the respondent filed a return and memorandum of law in support of their motion for summary judgment and petitioner filed a response in opposition and his own motion for summary judgment on November 16, 2007.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction

11

does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In Celotex, the Court held the defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner had failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## V. STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

12

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

As "a determination of a factual issue made by a State court shall be presumed to be correct," a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to reviewing the state court's application of federal law, " '[a] federal habeas court may grant the writ if the state court identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)).  Further, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Id.   "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004).

## VI. DISCUSSION AS TO PROCEDURAL BAR

### A. Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories

rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (I) there is either an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can

proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

 In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; <u>Blakeley v. Rabon</u>, 266 S.C. 68, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

 When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. <u>Patterson v. Leeke</u>, 556 F.2d 1168 (4th Cir. 1977); <u>Richardson v. Turner</u>, 716 F.2d 1059 (4th Cir. 1983).

2. Procedural bypass

 Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of

15

a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally

16

bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997)(*citing* Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

### 4. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* at 478.

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

In Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. *See* Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## VII. EXHAUSTION

The respondent contends only Grounds One and Three set forth in the petition and issues 4 and 8 set forth in the attachment are exhausted. The respondent's argument of procedural bar will not be addressed as to Grounds Two and Four because, even if these grounds were or were not procedurally barred, they should be dismissed, as discussed below, because these issues pertain to the state court's jurisdiction. Further, as to the remaining issues raised in the petitioner's attachment, as stated above, in responding to the respondent's argument that these claims are procedurally barred, the petitioner states that these "alleged fifteen additional grounds are merely points highlighting the four major grounds [set out in his petition]; they mainly consist of ineffective assistance of counsel." (Pet'r's Mem. Opp. Summ. J. Mot. at 1.) The undersigned has considered these factual allegations set forth in these "grounds" in the discussion of the four major grounds set out in the petition. Additionally, out of an abundance of caution, the undersigned also construes these claims as independent claims and concludes that these issues are procedurally barred as discussed below.

18

## VIII.  DISCUSSION

### A.  Grounds One and Three

In Grounds One and Three, the petitioner alleges he was deprived a fair trial by the assistant solicitor's comment regarding the petitioner's failure to present his uncle as a defense witness. As set out above, during the investigation, the petitioner made a voluntarily statement to police.  He claimed that he was at a nightclub and that he then had breakfast at a local Shoney's at the time of the offense.  He then stated that he went to his uncle's house and a store, and he played basketball with an unknown man.  He also claimed that he was scratched and bruised during the game. (App. 134-41; 205-10.)  After the State rested, the petitioner argued to the trial judge that he was entitled to a charge on alibi. (App. 247.)  Over the State's objection, the trial judge granted the petitioner's request and subsequently charged the jury on alibi.  (App. 248; 291.)  During his closing argument the petitioner argued his alibi defense to the jury.  (App. 275-76.)

In her closing argument the assistant solicitor commented on the petitioner's failure to produce his uncle as a corroborating witness.  The assistant solicitor stated:

> And the crucial period when Detective Bills told you he was most interested  in was this Shoney's and [at his Uncle's] house. Of course, you can't hold  the fact that Mr. Primus didn't present any evidence against him, but don't you think that would have made his alibi a lot stronger if his own uncle, had come to court and said, oh, he couldn't have been [at the crime scene] raping this woman  because he was at my house in . . .

(App. 261-262.) Defense counsel objected.  The trial judge stated, "I'll be telling you later on, I give each attorney a lot of leeway in making their summation to you and I'll be telling you the defendant doesn't have to do anything, doesn't have to prove anything, but I'll be explaining more to you later. Go ahead, Solicitor." (App. 261- 262.)

19

On direct appeal, the South Carolina Supreme Court held that the assistant solicitor's comment concerning the petitioner's failure to produce his uncle as a witness was improper. *Id.* at 106-08. However, the court concluded that any error was harmless beyond a reasonable doubt. *Id.* at 108-09. The South Carolina Supreme Court's finding was not unreasonable.

Assuming that the comments were improper, the petitioner has still not shown that he is entitled to relief on this claim, as he has failed to show the requisite prejudice. When considering whether comments by a prosecutor were so improper as to warrant relief, "the relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " Darden v. Wainwright, 477 U.S. 168, 181 (1986) (*quoting* Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). "Moreover, the appropriate standard of review for such a claim on a writ of habeas corpus is the 'narrow one of due process, and not the broad exercise of supervisory power.'" Darden, 477 U.S. at 181 (*quoting* Donnelly, 416 U.S. at 642). The standard in Donnelly is a very high standard. Comments which are undesirable or even "universally condemned" are not alone enough to warrant reversal. Darden, 477 U.S. at 180-81; *see also* Donnelly, 416 U.S. at 643.

In United States v. Harrison, 716 F.2d 1050 (4th Cir.1983), the Fourth Circuit set forth the following four factors to be examined to determine whether a prosecutor's comments were so damaging as to require reversal:

(1) the degree to which remarks misled the jury and prejudiced the defendant;

(2) whether remarks were isolated or extensive;

(3) whether absent the remarks, competent evidence established guilt; and

(4) whether comments were deliberately placed before the jury to divert attention to extraneous matters.

*Id*. at 1052. Here, after a careful review of the record , the undersigned does not find that the cited comments, even assuming they were improper, were so damaging as to require reversal in this case. There was an abundance of competent evidence on which the jury could have established the petitioner's guilt, notwithstanding the cited remarks. As the South Carolina Supreme Court concluded, the assistant solicitor's remarks were not so prejudicial that they deprived the petitioner of a fundamentally fair trial.

As correctly noted by the state court, it was undisputed that the victim was attacked and beaten and the issue was the identity of the perpetrator. The victim identified the petitioner as her attacker. She testified she had known the petitioner for seven years and had been on a date with him at one point. (App. 7.) She testified that the petitioner had given her a ride from St. George to a club in Bowman and her boyfriend had driven her home from the club around 2:00 a.m. At 7:00 a.m. on July 13th, she testified that the petitioner came to her house and asked her if she would like to drive with him to visit her uncle. She agreed and left with the petitioner. The petitioner drove his car to an abandoned home and told her to get out of the car. The victim testified that when she refused, he came around the side of the car with a rusty, pointed object and pulled her out of the car. He pushed her into the house and made her take her clothes off and lie on the bed. She testified he placed his penis inside her for a couple of seconds before she kneed him. The victim then escaped by jumping through a glass window and in the process she cut her finger. The victim testified that the petitioner followed her outside and wrestled her to the ground. She testified that she found a stick and jabbed the petitioner in the eye and chest and then ran to a nearby home. (App. 10-20; 243-44.)

The occupants of the nearby home testified that their doorbell rang early on the morning of July 13, 1997, and the victim was standing at their front door. They testified she was naked, had scratches and blood around her mouth, and was shaking and nervous.  They testified that she stated she had been raped and the victim looked "afraid, scared, just petrified."  They testified that the wife called the police. (App. 57-69.)

Deputy Gary Thompson, of the Dorchester County Sheriff's Department was the first officer to arrive.  He testified that the victim had a cut on her hand and  blood around her mouth.  Also, he testified she was in emotional distress. He stated that he found a wooden stick on the front porch steps.  He testified that the victim had stated that she had been raped at a nearby house and she identified the petitioner as her attacker. (App. 7680.)

A fingerprint examiner, Sergeant Earl Asbell, testified that in his opinion a fingerprint on the doorknob of the abandoned home belonged to the petitioner.  Sgt. Asbell also testified about photographs of the abandoned home.  Th photographs showed a broken glass window, a trail of blood leading in the direction of the nearby home, a purple t-shirt in the bedroom, and a tennis shoe in the bedroom. The victim testified the shirt and  shoe belonged to her. (App. 92-107.)

A SLED serologist testified that the laboratory analyzed three areas of blood located on the wooden stick.  Test results showed that blood on one end and the middle of the stick was consistent with the victim's DNA profile, but the victim could not have been the donor of the blood found on the other end of the stick.  However, the results showed the petitioner could have been the donor of this blood.  According to the serologist, testing the population at random, 1 of 174 people would match the two-point DNA profile on the blood found on this end of the wooden stick.  (App. 168-82.)

22

Sam Richardson of the Dorchester County Sheriff's Department also testified at trial.  He and Detective Bills had interviewed the petitioner.   Richardson testified that the petitioner admitted that he had given the victim a ride to Ollie Murray's on the night of the rape.  However, he said that he had picked her up from her house.  Richardson testified that the petitioner stated that later he had gone to Club Venezuela and then had breakfast at the local Shoney's at approximately 7:00 a.m.  Richardson testified that the petitioner stated that he went to his uncle's house, and then drove back into town.  He testified the petitioner stated that his car had broken down and so he left it on the side of the road between 7:00 and 10:00 a.m..  Richardson testified that the petitioner stated that  he then played basketball about 10:00 with someone he just met and he received cuts and scratches while playing basketball.  (App. 13140; 208-11.)

Photographs of the cuts, scratches, and abrasions  on the petitioner's face, head, and torso were introduced at trial. (App. 140-41; 202-03.)  The injuries depicted in the photographs were consistent with the victim's testimony.  (App. 204.)   Deputies also testified that they tried to contact the petitioner's uncle,  but they were never able to locate him.  (App. 211-13.)Deputy Bills testified that he conducted another interview with the petitioner and the petitioner admitted he did not go into the club as he had previously told the police.  Deputy Bills testified that the petitioner then became upset and angry and refused to talk anymore. (App. 213-14.)

Dr. Reinhardt, an expert in obstetrics and gynecology with a sub-speciality in forensic evidence collection in sexual assaults, testified that he examined the victim at the hospital on July 13, 1997. He opined that she had obvious injuries indicative of a struggle. (App. 228-33.)  Dr. Reinhardt described the examination for the rape protocol kit and testified the victim had a normal pelvic exam, but  that thirty percent of sexual assault victims have a normal exam. Dr. Reinhardt

23

testified that the victim was within the five percent of victims who have injuries severe enough to require surgical repair, in this case an injury requiring sutures. He also testified that her injuries were typical of someone who was struggling with an attacker, and that specifically they were consistent with having been dragged and pushed up against something. (App. 233-238.)

As noted above, the state court found the evidence of guilt was overwhelming. Further, the court noted that the trial judge had instructed the jury on the petitioner's constitutional right not to testify and that the exercise of this right could not be considered in its deliberations. The South Carolina Supreme Court did not unreasonably apply Donnelly and Darden when it concluded that the assistant solicitor's remarks were not so prejudicial that they deprived the petitioner of a fundamentally fair trial as there was overwhelming evidence of the petitioner' guilt. The state court's decision was not contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, it is recommended that the respondent's motion for summary judgment be granted as to Grounds One and Three.

## B. Grounds Two

In Ground Two, the petitioner alleges that the trial court lacked subject matter jurisdiction because he was indicted for the charge of CSC in the first degree, but he was convicted of ABHAN and ABHAN is not a lesser-included offense of CSC in the first degree. The respondent submits that this ground has not been exhausted and is not cognizable in a federal habeas action. The undersigned agrees.

The South Carolina Supreme Court held that ABHAN is a lesser offense of CSC in the first degree as a matter of state law. Primus, 564 S.E.2d at 105-06. A state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter cognizable

24

in federal habeas corpus.  Wright v. Angelone, 151 F.3d 151 (4th Cir. 1998); Wills v. Egeler, 532 F.2d 1058, 1059 (6th Cir.1976) (a "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary").  *See also* Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (holding "it is not the province of a federal habeas corpus court to reexamine state court determinations on state-law questions.")  Accordingly,  it is recommended that the respondent's motion for summary judgment be granted as to Ground Two.

## C.  Grounds Four

In Ground Four, the petitioner alleges that the trial court lacked subject matter jurisdiction because he was indicted for the charge of CSC in the first degree, but he was convicted of ABHAN; and he contends that ABHAN is not a lesser-included offense of CSC in the first degree.  He argues that this result is mandated by the South Carolina Supreme Court's subsequent decision in State v. Gentry, 363 S.C. 93, 610 S.E.2d 494 (2005).   This ground fails to state a claim upon which federal habeas corpus relief may be granted as it based upon the trial court's subject matter jurisdiction.  As stated in  above in the discussion of Ground Two, a  state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter cognizable in federal habeas corpus.  Wright, 151 F.3d 151; Wills, 532 F.2d at 1059  (a "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary").  *See also* Estelle, 502 U.S. at 67-68 (holding "it is not the province of a federal habeas corpus court to reexamine state court determinations on state-law questions.").  Accordingly,  it is recommended that the respondent's motion for summary judgment be granted as to Ground Four.

### D. Grounds in Attachment to Habeas Petition

In his attachment, the petitioner sets forth fifteen claims relating to his allegation that trial counsel was ineffective.  In his order denying the petitioner PCR, the PCR Judge specifically addressed only three of the petitioner's allegations that counsel was ineffective: (1) failure  to investigate the petitioner's case; (2) failure to call Theodore James as a witness; and (2) failure to call Joe Hodges, petitioner's uncle, as an alibi witness.   The PCR Judge found that the petitioner had waived all other allegations raised in the PCR application or at the hearing by failing to present any probative evidence in support of those allegations. (App. 488-91.)   In appealing the denial of PCR, the petitioner raised only one issue in his <u>Johnson</u> petition: Whether trial counsel erred in failing to call alibi witness in support of petitioner's alibi defense.  (<u>Johnson</u> Pet. at 2.)  Therefore, as discussed below, most of these claims have not been exhausted and are now procedurally barred.

### i.  Grounds 4 and 8

In Ground 4 in his attachment, the petitioner alleges that counsel was ineffective for failing to conduct an adequate investigation and call all witnesses.  In Ground 8, the petitioner alleges trial counsel was ineffective for failing to call Joe H., his uncle, as an alibi witness.  In a statement , the petitioner had stated that he was at his uncle's house and did not commit this crime.  At the PCR hearing, the petitioner's uncle testified that the petitioner came to visit him the day of the crime.  He testified that the petitioner arrived around 10:00 a.m. and left their house around 1:00 or 2:00 p.m. (App.  413-19.)   The petitioner's aunt, also testified that the petitioner came to visit them on the day of the crime.  She testified that the petitioner arrived around 10:00 a.m. and left the house around 1:00 or 2:00 p.m.  (App. 422-30.)  Trial counsel testified that he was aware of the uncle and the aunt as potential witnesses, but that the petitioner's visit with them was after the crime had occurred.

26

Trial counsel testified that calling the aunt and uncle would not benefit the petitioner because the petitioner's visit to their house was hours after the attack and would not support the petitioner's alibi defense. (App. 468-69.; 461-67.) The PCR judge found that trial counsel's testimony was credible and that the petitioner's testimony was not. The PCR judge further found that the petitioner failed to prove either deficient performance or any prejudice. (App. pp. 492-94.)

First, counsel's testimony reflects that he made a reasonable, tactical decision not to present the petitioner's uncle as a witness because he could not provide an alibi for the precise time of the offenses and counsel did not have anyone who could vouch for the petitioner's whereabouts during the time of the crimes. Further, because the witness did not provide an alibi for the time of the offenses, the petitioner cannot show prejudice under Strickland. Therefore, the state court's decision was not contrary to, nor an unreasonable application of, clearly established federal law and was not an unreasonable determination of the facts. Accordingly, it is recommended that the respondent's motion for summary judgment be granted as to Grounds 4 and 8.

### ii. Remaining Grounds in Attachment (1-3, 5-7, and 9-15)

In Grounds 1 and 10, the petitioner alleges that trial counsel was ineffective for not objecting when the State allegedly failed to disclose DNA evidence until "just hours before trial." In Grounds 2 and 11, the petitioner alleges that trial counsel's failure to object to the untimely disclosure of this DNA evidence prevented the issue from being preserved for appellate review. In Ground 3, the petitioner alleges that counsel was ineffective for not timely filing a motion under Brady v. Maryland, 373 U.S. 83 (1963). He alleges the DNA evidence could have been discovered. All of these allegations were procedurally defaulted in the petitioner's state PCR under Coleman because the PCR judge did not rule on these issues. Further, the petitioner has not shown cause or prejudice

from the default.  Therefore, it is recommended that the respondent's motion for summary judgment be granted as to Grounds 1, 3, and 10.

In Grounds 5 and 6, the petitioner alleges trial counsel was ineffective for errors relating to jury selection and voir dire.  Both of these issues were procedurally defaulted in state court under Coleman because they were not ruled upon by the PCR judge and the petitioner did not obtain a ruling via a Rule 59(e) motion.  Further, the petitioner has not alleged any cause and prejudice to excuse the default.  Therefore, it is recommended that the respondent's motion for summary judgment be granted as to Grounds 5 and 6.

In Ground 7, the petitioner contends that trial counsel was ineffective because counsel failed to call Theodore James as a witness.  This allegation is procedurally defaulted under Coleman because the petitioner did not raise this issue in his Johnson petition seeking certiorari. *See* Rule 208(b)(1)(B), (D), SCACR (issue not argued in brief is deemed abandoned and precludes consideration on appeal); State v. Hornsby, 484 S.E.2d 869, 871 (S.C. 1997) (holding an issue not argued in the brief is deemed abandoned and precludes consideration on appeal). Further, the petitioner has not alleged any cause or prejudice for the default. Therefore, it is recommended that the respondent's motion for summary judgment be granted as to Ground 7.

In Ground 9, the petitioner alleges that counsel was ineffective for failing to file a notice of alibi on his behalf.  This issue was procedurally defaulted in state court under Coleman because it was not ruled upon by the PCR judge and the petitioner did not obtain a ruling via a Rule 59(e) motion.  Further, the petitioner has not alleged any cause or prejudice. Additionally, to the extent petitioner did raise this claim, it fails for the reasons discussed in section i. Grounds 4 and 8 above.

Therefore, it is recommended that the respondent's motion for summary judgment be granted as to Ground 9.

In Grounds 10-15, the petitioner alleges ineffective assistance of counsel for failing to adequately object to the challenged prosecutorial comments and move for a mistrial and the propriety of the trial court's ruling.  An ineffective assistance of trial counsel claim based upon these facts was not raised in the petitioner's state PCR proceeding.[4]   Therefore, claims of ineffective assistance of counsel based on these allegations are procedurally defaulted.  Moreover, the petitioner has not alleged any cause  or prejudice.  Therefore, it is recommended that the respondent's motion for summary judgment be granted as to Grounds 10-15.

## IX. CONCLUSION

Based on the foregoing, it is recommended that respondent's motion for summary judgment (docket entry # 15) be GRANTED and the petitioner's Petition for Writ of Habeas Corpus should be denied, and the petition dismissed without an evidentiary hearing.

Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge


February 27, 2008
Florence, South Carolina


**The parties' attention is directed to the important notice on the next page.**

_____

[4]The underlying claim regarding the solicitor's comment is addressed in Grounds One and Three, supra.

29