IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| James Anthony Primus, # 252315, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | C.A. No.: 4:07-cv-02652-PMD-TER |
| v. | ) | |
| | ) | **ORDER** |
| Warden A.J. Padula, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the court upon the Magistrate Judge's recommendation that Respondent's Motion for Summary Judgment be granted. The Record contains a Report and Recommendation ("R&R") of a United States Magistrate Judge which was made in accordance with 28 U.S.C. § 636(b)(1)(B). A dissatisfied party may object, in writing, to an R&R within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Petitioner filed timely objections to the R&R.

**BACKGROUND**

Although the Magistrate Judge's R&R contained a thorough recitation of the facts, the court will include them herein. Petitioner, James Anthony Primus ("Petitioner" or "Primus") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on or about July 20, 2007. Respondent filed a Motion for Summary Judgment on October 25, 2007, and Primus filed a Response in Opposition on November 16, 2007. Magistrate Judge Thomas E. Rogers, III entered a Report and Recommendation on February 27, 2008, in which he recommended that Respondent's Motion for Summary Judgment be granted.

Primus is currently incarcerated at the Lee Correctional Institution of the South Carolina Department of Corrections. In September of 1997, Petitioner was indicted for criminal sexual

conduct ("CSC") in the first degree, kidnapping, possession of crack cocaine, and burglary in the second degree. (App. 500-07.) Petitioner was represented on these charges by attorney William L. Runyon, Jr., and Petitioner was tried by a jury on the charges of CSC, kidnapping, and burglary before the Honorable Luke N. Brown, Jr., between August 31 and September 1 of 1998. (*Id.* at 488-89.) Petitioner was convicted of Kidnapping and Assault and Battery of a High and Aggravated Nature ("ABHAN"), and Judge Brown sentenced him to ten years for ABHAN and thirty years for kidnapping, running consecutively. (*Id.* at 489.)

Petitioner filed a timely notice of appeal, and Chief Attorney Daniel T. Stacy and Assistant Appellate Defender Katherine Carruth Link, both of the South Carolina Office of Appellate Defense, represented Petitioner on appeal to the South Carolina Court of Appeals. Petitioner filed his final brief on October 21, 1999, which raised the following issue: "Whether the court erred when it permitted the solicitor to argue that appellant had not produced witnesses to support his alibi, where the defense adduced no evidence and the comment was prejudicial." (*Id.* at 332.)

On July 10, 2000, the Court of Appeals of South Carolina reversed Petitioner's convictions in *State v. Primus*, 341 S.C. 592, 535 S.E.2d 152 (Ct. App. 2000). (App. 361-72.) The State filed a petition for rehearing on July 24, 2000, but on August 17, 2000, the South Carolina Court of Appeals denied the rehearing petition. (*Id.* at 373-84.)

On September 15, 2000, the State filed a petition for a writ of certiorari with the South Carolina Supreme Court raising the following issues:

> 1. Did the Court of Appeals err in finding it was improper for the Assistant Solicitor to comment on Respondent's failure to call his uncle as a witness?
>
> 2. Did the Court of Appeals err in denying the State's motion to supplement the record on appeal?

2

3.  Did the Court of Appeals err in finding the trial court committed reversible error in failing to sustain Respondent's objection to the Solicitor's comments and failing to immediately give a curative instruction?

4.  Did the Court of Appeals err in concluding the trial court's jury charges on Respondent's rights not to testify or put up any evidence did not cure the error of allowing the Solicitor's improper comments?

5.  Did the Court of Appeals err in concluding the probability of prejudice from the Solicitor's comment mandated reversal of the conviction under a harmless error analysis?

(Pet. for Writ of Cert. at 3.)  By an order dated February 9, 2001, the South Carolina Supreme Court granted certiorari on these issues and further ordered the parties to address the following issue: "Did the trial court have subject matter jurisdiction in this case as respondent was indicted for first-degree criminal sexual conduct, but he was convicted of assault and battery of a high and aggravated nature?"  (Order granting Writ of Cert. at 1.)  Then, on March 8, 2001, the State filed a brief discussing the following issues:

1.  Did the trial court have subject matter jurisdiction in this case as Respondent was indicted for first-degree criminal sexual conduct, but was convicted of assault and battery of a high and aggravated nature?

2.  Did the Court of Appeals err in finding it was improper for the Assistant Solicitor to comment on Respondent's failure to call his uncle as a witness when Respondent made a voluntary statement relating his alibi, and specifically posed questions on cross-examination that elicited and supported his alibi defense?

3.  Did the Court of Appeals err in denying the State's motion to supplement the Record on Appeal when the requested portions were relevant to the curative instruction analysis and harmless error analysis employed by the Court?

4.  Did the Court of Appeals err in finding the trial court committed reversible error in failing to sustain Respondent's objection to the Assistant Solicitor's comment on alibi and immediately give a curative instruction?

5.  Did the Court of Appeals err in concluding the trial court's jury charges did not cure any error in allowing the Assistant Solicitor's comment on alibi?

3

      6.  Did the Court of Appeals err in concluding the Assistant Solicitor's comment on alibi was not harmless error?

On June 8, 2001, Petitioner also filed a brief.

      The Supreme Court of South Carolina issued an opinion on May 20, 2002, in which the court affirmed in part and reversed in part the Court of Appeals' decision.  *See State v. Primus*, 349 S.C. 576, 564 S.E.2d 103 (2002).  The Supreme Court of South Carolina concluded the trial court had subject matter jurisdiction over the ABHAN conviction because the court concluded ABHAN is a lesser included offense of first degree CSC.  *See id*. at 581, 564 S.E.2d at 106.  The court further concluded the Court of Appeals correctly held that the assistant solicitor's comment concerning Primus' failure to produce his uncle as a witness was improper.  *Id*. at 584, 564 S.E.2d at 107-08.  However, the Supreme Court of South Carolina determined that any error was harmless beyond a reasonable doubt.  *Id*. at 585-88, 564 S.E.2d at 108-09.  The South Carolina Supreme Court sent the remittitur down on June 5, 2002.

      On July 10, 2002, Petitioner filed a pro se application for post-conviction relief ("PCR"), raising twelve allegations of ineffective assistance of counsel (verbatim):

      1.  Trial counsel was ineffective for failing to object to the prosecution officer presenting D.N.A. evidence just hours before trial. TR. P. 235 Line 4-21.

.

      2.  Counsel failed to object to the prosecution officer presenting the D.N.A. evidence just one hour before trial.  Counsel denied the applicant the opportunity to preserve this issue for the Appellate Court review.

      3.  Trial counsel was ineffective when he failed to file a Brandy Motion to obtain any and all exculpatory evidence: <u>Brady v. Maryland</u> 373 U.S. 83 (1983).

      4.  Trial counsel was ineffective where he failed to conduct a legal, factual or meritorious investigation of the applicant's case.  <u>Bertha Robinson v. State</u>, ___ S.E.2d ___, S.C. (OP. No. 23642 April 27, 1992) <u>Frederick Jetter v. State</u>, ___ S.E.2d ___, S.C. OP. No. 1992 <u>Cothill Tate v. State</u> S.E.2d S.C. OP. No. April 1992.

5.  Trial counsel was ineffective when he failed to request the trial court to excused for cause the following voir dir Jurors Tr. p. 13-14 Jim Rice Juror (111) he knew <u>Sheriff Ray Rush</u> from a church men's group.  His full name is James S. Rice.  Tr. p. 12-22 Juror 152 <u>Linda Huffman</u>.  Tr. p. 10-22 Juror 101 <u>Carol Moore</u>.  <u>Samuel Joyner Trip</u>.  20-23 Juror 75.  The question was never ask by court whoever served on a Jury before: Mr. Joyner served before.  Linda Huffman contributor to Mothers Against Drunk Driving.  Carol Moore previously used the Assistant Solicitor Mr. Robbins.

6.  Applicant contend that trial counsel's failure to object to Jurors James Rice, Linda Hurrman, Carol Moore, and Samuel Joyner from remaining on the voir dire pool failed to preserve the issue for appellate review.  Pike v. South Carolina Department of Transportation 506 S.E. 2d 516, 322 S.C. 605. Reh. Den.

7.  Counsel failed to call Theodore James as a witness relevant to case.

8.  Applicant was denied a fair and impartial trial by trial counsel's failure to object and to challenge voir dire jurors James S. Rice, Linda Huffman, Carol Moore and Samuel Joyner.  <u>State v. Powers</u>, 501 S.E.2d 116, 331 S.C. 37.  Reh. Den (1998).

9.  Counsel failed to call Joe Hodges as a witness to alibi for defense.

10.  Trial counsel failed according to rule 5.(c) to file a notice of alibi by defendant.

11.  Trial counsel failed according to rule 7(6) to file a notice for continue in order to view the belated evidence which was the D.N.A. that was brought in by the prosecutor's office.

12.  Applicant contend that he never had a chance to view the D.N.A. that was presented into evidence by the prosecutor until August 31, 1998, and he didn't get a chance to view it then.  TR. P. 235.  Line 1-19.

(App. 390-91.)  On June 7, 2004, Petitioner filed an amendment to his PCR application in which he challenged the trial court's subject matter jurisdiction because (1) the prosecutor was the only witness before the Grand Jury, in contravention of state court precedent; and (2) the prosecutor failed to comply with the requirements of Rule 3 of the South Carolina Rules of Criminal Procedure. (*Id.* at 394-96.)

On November 16, 2004, the Honorable James C. Williams, Jr. held an evidentiary hearing

5

on Petitioner's PCR application.  (*Id*. at 401.)  Petitioner was present at the hearing and represented

by attorney Rutherford Smith.  On December 21, 2004, Judge Williams denied Petitioner's post-

conviction relief application and dismissed his PCR application with prejudice.  (*Id*. at 494.)

Petitioner filed a timely notice of appeal.

Acting Deputy Chief Attorney Wanda H. Carter of the South Carolina Office of Appellate

Defense represented Petitioner on appeal, and on July 5, 2005, Ms. Carter filed a <u>Johnson</u> petition

and a motion to be relieved as counsel.[1]  The issue resented was: "Trial counsel erred in failing to

call alibi witnesses to testify in support of petitioner's alibi defense."  (<u>Johnson</u> Pet. at 2.)  On April

4, 2007, the South Carolina Court of Appeals denied certiorari and granted counsel's motion to be

relieved.  The remittitur was sent down on April 24, 2007.

## FACTS

Just as Magistrate Judge Rodgers did in his R&R, the court finds it helpful to review in detail

the facts underlying Petitioner's conviction for kidnapping and ABHAN.  The following facts are

set forth in *State v. Primus*, 341 S.C. 592, 535 S.E.2d 152 (Ct. App. 2000):

> Primus was charged with first degree criminal sexual conduct, second degree
> burglary and kidnapping for events which occurred on July 13, 1997. The State
> presented evidence that Primus, armed with a rusty and pointed metal object, forced
> Nikki Scott (Victim) into an abandoned house where he raped her.

> The victim testified that on July 12 she saw Primus at a cookout at a gas
> station in St. George, where the victim drank about three beers. Around 10:00 p.m.,
> Primus gave the victim a ride from the station to a club in Bowman, where she drank
> about five or six beers. The victim left the club at 2:00 a.m. and was driven home by
> her boyfriend. At 4:30 a.m., she left her house "with another person" and returned
> home before 6:30 a.m.

> Around 7:00 a.m. on July 13, Primus drove to the victim's house and invited
> her to ride with him to his uncle's house. The victim agreed to accompany Primus

[1]*See Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988).

and voluntarily got into his car. She had known Primus for about seven years and had even been on one date with him in the past.

According to the victim, Primus told her that he was going to get some gas money from his house, but instead drove to an abandoned house and demanded she get out of his car. When the victim refused, Primus threatened her with a pointed, rusty weapon and pulled her out of the car. He pushed the victim inside the house where he ordered her to undress. Primus had begun assaulting her when the victim "kneed him" and escaped through a window.

Outside the house, the victim attempted to attract the attention of a passing truck but was forced to the ground by Primus. While on the ground, she found a stick which she used against her assailant, "jab[bing]" him in the chest and gouging him in the eye. She then ran naked and bleeding to a nearby house. The victim immediately claimed Primus raped her. She repeated the same story to police and medical personnel. In addition to naming her attacker, the victim described his car as a red convertible which he cranked with a screwdriver instead of a key.

While searching the abandoned house, police found the weapon the victim had described. Her clothing was discovered inside the house where she testified Primus forced her to undress. A broken window matched her description of how she escaped the home. The police uncovered a latent fingerprint matching Primus' right index finger on the inside doorknob of the house.

Hubert and Toni Shieder, who lived at the home where the victim sought help, described her as naked, bleeding, and very upset. The Shieders testified the victim immediately declared she had been raped. Officers found on the Shieders' porch the stick the victim used to defend herself. The victim's blood was found on the middle of the stick. On one end of the stick, blood consistent with the victim's DNA was found. Blood inconsistent with the victim's DNA but consistent with Primus' DNA was located on the other end of the stick. Because of the limited amount of blood on the stick, there were interpretable results for only two of the eight sites normally tested. Thus, one person in every 174 people would have the same genetic markers found in that blood. The test results "could not exclude James Primus as a donor."

Later on the day of the crimes, police discovered a red convertible abandoned on the side of the highway. The car, which was registered to Primus, had a "punched ignition," which indicated a screwdriver may have been used to crank it. When the police arrested Primus, he had several scratches on his body and a gouge mark on his eye matching the wound the victim said she inflicted on her attacker.

At trial, Primus did not testify or call witnesses, but the State introduced testimony he offered an alibi to police when questioned. Specifically, Primus told

7

police he had eaten breakfast at 7:00 a.m. at a Shoney's restaurant and visited his uncle, Joe Hodges, during the time frame of the alleged crimes. He stayed at his uncle's house about three hours. Primus claimed that after he visited his uncle, his car broke down on the side of the road. He accepted a ride from a stranger into town where he played basketball with a guy he had never met before named David. Primus asserted "this was the first time they ever played basketball together, didn't know him, and didn't know where he lived." Primus explained he received his wounds while playing basketball. As for Primus' car, an officer, who remembered driving in the area at approximately 10:00 a.m. on the morning of the crimes, stated there was no red convertible on the side of the highway.

The record reflects the following exchange occurred during the State's closing argument:

[Assistant Solicitor]: Primus's statement has to admit a few facts when he talked to the police he had to admit a few things, had to come up with some reason. Of course it wasn't because I attacked [Victim] and dragged her into an abandoned house and raped her, no, no, no, no. It was because I was playing basketball. He also had to admit that he was up all night, he never went to bed. He told you that. He was up and at them all night long that night. We know that was true because he was at [Victim's] house at 6:30 or 7:00 and taking her out to Gum Branch Road and raping her all during this period.

*And the crucial period when Detective Bills told you he was most interested in was this Shoney's and Uncle Joe Hodges' house. Of course, you can't hold the fact that Mr. Primus didn't present any evidence against him, but don't you think that would have made his alibi a lot stronger if Joe Hodges, his own uncle, had come to court and said, oh, he couldn't have been on Gum Branch Road raping this woman because he was at my house in Corey Woods?* (Emphasis Added).

[Defense Counsel]: I have an objection, your Honor. We don't have to bring those people to court, Judge.

The Court: I'll be telling you later on, I give each attorney a lot of leeway in making their summation to you and I'll be telling you the defendant doesn't have to do anything, doesn't have to prove anything, but I'll be explaining more to you later.

Go ahead, Solicitor.

8

>        After closing arguments, the trial court charged the jury as to the applicable
> law, including an instruction on Primus' right not to testify or present evidence in his
> defense.

*Primus*, 341 S.C. at 597-600, 535 S.E.2d at 154-56.

## PETITIONER'S GROUNDS FOR RELIEF

As noted above, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.  He asserted the following grounds for relief:

>    **GROUND ONE**: Did the trial court err in permitting the assistant solicitor to
> comment on Primus' failure to produce evidence in his defense?
> Supporting facts: No amount of curative instruction could erase the prejudicial effect
> the solicitor's comment had on the jury.
>
>    **GROUND TWO**: Did the trial court have subject matter jurisdiction to convict
> Primus of assault and battery of a high and aggravated nature?
> Supporting facts: Primus was convicted under an indictment for criminal sexual
> conduct which stated that ABHAN is a lesser included offense.  ABHAN is an
> anomaly in S.C. law.  The elements of these offenses do[] not make one or the other
> a lesser included offense of each.
>
>    **GROUND THREE**: Did the Court of Appeals err when considering solicitor's
> statements about Primus' uncle as an alibi witness?
> Supporting facts: Primus' failure to call his uncle as a witness should not have
> shifted the burden of proof on defendant.  Solicitor's comment removed the
> presumption of innocence from the defendant and gave the jury the opportunity to
> infer guilt.  Once implanted in the jurors mind, prejudice is inescapable.
>
>    **GROUND FOUR**: A later decision by the Supreme Court in <u>State v. Gentry</u>
> overruled the subject matter jurisdiction and indictment in Primus.
> Supporting facts: This later decision concerning subject matter jurisdiction and the
> sufficiency of indictment in Primus' case involving the ABHAN was effected by this
> decision.  Primus contends that a charge for ABHAN resulting in conviction should
> not be tried under an indictment for criminal sexual conduct 1st degree.

(Pet. at 6-11.)  There is an attachment to Primus' § 2254 petition, in which he raises the following

grounds (verbatim):

>    1. Trial Counsel was ineffective for failing to object to the prosecution when it
> presented D.N.A. evidence just hours before trial. This event limited defendants

opportunity to prepare himself for its admission through evidentiary hearing or suppression hearing.

2. Counsels (Trial) failure to object to the belated D.N.A. evidence did not preserve this issue for appellate review.

3. Trial Counsel was ineffective for failing to file a Brady motion for all exculpatory evidence. The D.N.A. is one example case in point.

4. Trial Counsel was ineffective when he failed conduct a legal, factual or meritorious investigation of applicant's case. All witnesses, should not have been excluded as part of trial strategy.

5. Trial Counsel was ineffective when he failed to request the trial court to excuse for cause the following members of the jury pool: Jim Rice No 111, Linda Huffman 152, Carol Moore 101, Samuel Joyner 75. These members had affiliations with certain Law officials and the organization MADD, Mothers against drunk driving.

6. Counsels failure to object during the voir dire, failed to preserve this issue for appellate review.

7. Counsel failed to call Theodore James as a witness. The testimony of this witness may have offset the victim in this case credibility.

8. Counsel failed to call Joe Hodges as an alibi witness for the defendant.

9. Trial Counsel failed to file a notice of alibi for defendant.

10. Counsel failed to request an evidentiary hearing on the late entrance of DNA evidence offered by the State.

11. Counsel failed to preserve for review belated D.N.A. evidence.

12. Counsel failed to request a mistrial after the trial courts attempt at a curative instruction. He accepted things as they were. This is ineffectiveness.

13. During prosecutions closing remarks, Counsel failed to substantiate whether his objection was sustained or over-ruled, when there was no evidence of a clear and plain ruling. This is ineffective assistance of counsel and a Sixth amendment violation.

14. The assistants error cannot be considered harmless. Prejudice to the jury is inescapable.

15. The Courts curative instruction and his ruling on the defense attorneys objection was ambiguous.

(Attachment to Pet.)  As the Magistrate Judge noted, however, in his Response in Opposition to Respondent's Motion for Summary Judgment, Petitioner states that these "alleged fifteen additional grounds are merely points highlighting the four major grounds [set out in his petition]; they mainly consist of ineffective assistance of counsel."  (Resp. in Opp'n at 1.)

## STANDARD OF REVIEW

### A.     Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  All evidence should be viewed in the light most favorable to the nonmoving party.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The "obligation of the nonmoving party 'is particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)).  Summary judgment is not "a disfavored procedural shortcut," but an important mechanism

11

for weeding out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327.

## B.     Magistrate Judge's R&R

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). After a review of the entire record, the R&R, and Petitioner's objections, the court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.

## ANALYSIS

## A.     Section 2254 Petitions

With respect to those claims that were adjudicated by the state court on their merits, habeas relief is warranted only if a petitioner can demonstrate that the adjudication of his claims by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *Id.* at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently

than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* at 407-08.

"The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002). "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal habeas court may not issue the writ under the "unreasonable application" clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

**B.     Magistrate Judge's R&R**

In his R&R, Magistrate Judge Rogers recommended granting Respondent's Motion for Summary Judgment. With respect to Grounds One and Three, the Magistrate Judge concluded that Petitioner was not entitled to relief because the Supreme Court of South Carolina's decision was not contrary to, nor an unreasonable application of, clearly established federal law. (R&R at 24.) Magistrate Judge Rogers stated,

> [T]he state court found the evidence of guilt was overwhelming. Further, the court noted that the trial judge had instructed the jury on the petitioner's constitutional right not to testify and that the exercise of this right could not be considered in its deliberations. The South Carolina Supreme Court did not unreasonably apply Donnelly and Darden when it concluded the assistant solicitor's remarks were not so prejudicial that they deprived the petitioner of a fundamentally fair trial as there

13

was overwhelming evidence of the petitioner's guilt.

(*Id*.)  Magistrate Judge Rogers also determined that Respondent's Motion for Summary Judgment should be granted with respect to Grounds Two and Four because those grounds are not cognizable in a federal habeas action.  (*Id*. at 24-25.)  He stated, "A state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter cognizable in federal habeas corpus."  (*Id*. at 24-25.)[2]

Magistrate Judge Rogers also recommended granting Respondent's Motion for Summary Judgment on the fifteen claims in the attachment to Primus' § 2254 petition.[3]  The Magistrate Judge noted that in the order denying the petitioner PCR, the PCR Judge specifically addressed only three of Petitioner's allegations of ineffective assistance of counsel: (1) failure to investigate Petitioner's case; (2) failure to call Theodore James as a witness; and (3) failure to call Joe Hodges, Petitioner's uncle, as an alibi witness.  (*Id*. at 26.)  With respect to ground four and ground eight in the attachment, the Magistrate Judge concluded the state court's decision was not contrary to, nor an unreasonable application of, clearly established federal law and was not an unreasonable determination of the facts.  (*Id*. at 27.)  He also recommended granting Respondent's Motion for Summary Judgment on grounds one, two, three, ten, and eleven because "[a]ll of these allegations were procedurally defaulted in the petitioner's state PCR under <u>Coleman</u> because the PCR judge did

_____

[2]The R&R states, with respect to Ground Two, "The respondent submits that this ground has not been exhausted and is not cognizable in a federal habeas action.  The undersigned agrees."  (R&R at 24.)  Although the R&R seemingly speaks to the issue of whether Ground Two was exhausted, the basis of the Magistrate Judge's recommendation with respect to Ground Two is that a state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not cognizable on federal habeas review.  (*Id*. at 24-25.)

[3]When referring to the grounds in the attachment to the petition, the court will use lower case letters.  When referring to the grounds in the main petition, the court will use capital letters.

not rule on these issues.  Further, the petitioner has not shown cause or prejudice from the default."
(*Id*. at 27-28.)

As to ground five and six in the attachment, the Magistrate Judge determined these claims
were procedurally defaulted because "they were not ruled upon by the PCR judge and the petitioner
did not obtain a ruling via a Rule 59(e) motion."  (*Id*. at 28.)  Magistrate Judge Rogers also
concluded that ground seven in the attachment was procedurally defaulted because Petitioner did
not raise this issue in his *Johnson* petition seeking certiorari.  (*Id*.)  The R&R further states that
ground nine in the attachment is procedurally defaulted "because it was not ruled upon by the PCR
judge and the petitioner did not obtain a ruling via a Rule 59(e) motion."  (*Id*.)  Lastly, with respect
to grounds ten through fifteen in the attachment, the Magistrate Judge determined these grounds
were procedurally defaulted because "[a]n ineffective assistance of trial counsel claim based upon
these facts was not raised in the petitioner's state PCR proceeding."  (*Id*. at 29.)

## C.    Objections

Petitioner objects to the Magistrate Judge's recommendation that Respondent's Motion for
Summary Judgment be granted, and at the same time he filed his Objections, Primus filed a Motion
for Continuance and Leave of Court to Pursue Unexhausted Claims in State Court.  (*See* Doc. No.
[29].)  With respect to Grounds One and Three, Petitioner states,

> Petitioner feels that the assistant solicitor's comments during the trial[]
> projected in the minds of the jury that petitioner was guilty.  The solicitor's statement
> produced the opposite effect of what it was intended to suggest.  At that point the
> trial judge did not proclaim a definite ruling as to whether or not the objection made
> by petitioner's trial counsel was sustained or overruled; instead the statement was left
> to fester in the minds of the jury.  Petitioner asserts that at this juncture in the trial,
> no amount of curative instruction could have relieved the jury of the prejudicial
> determination that petitioner was indeed guilty.  Petitioner also asserts that this error,
> though acknowledged, was not harmless.  Petitioner has a constitutional right
> guaranteed by the Fifth Amendment of the United States Constitution of his right to

a fair trial.  The exploitation of this right by the solicitor was not fair.

(Objections at 2-3.)

As a preliminary matter, while the court acknowledges Primus is proceeding pro se, his objection is not specific.  This court is charged with reviewing de novo only those objections that are specific.  *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (noting that courts have held that *de novo* review may be dispensed with "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations"); *see also Keeler v. Pea*, 782 F. Supp. 42, 43 (D.S.C. 1992).  However, the court has reviewed the Magistrate Judge's recommendation with respect to Ground One and Three and agrees with the Magistrate Judge.  Magistrate Judge Rogers noted that although the South Carolina Supreme Court held the assistant solicitor's comment concerning Petitioner's failure to produce his uncle as a witness was improper, the court concluded such error was harmless beyond a reasonable doubt.  *See Primus*, 349 S.C. 576, 584-88, 564 S.E.2d 103, 107-09 (2002); *see also* R&R at 20.

Primus is not entitled to federal habeas relief pursuant to § 2254 unless the Supreme Court of South Carolina's decision was (1) an unreasonable determination of the facts or (2) was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d).  Before turning to the merits of Primus' claim, the court will review relevant Supreme Court precedent.

In *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), the Supreme Court granted certiorari to consider, in the context of the entire trial, whether certain of the prosecutor's remarks during closing argument were sufficiently prejudicial to violate his due process rights.  *Donnelly*, 416 U.S. at 639. Two comments were at issue; the first involved the expression of a personal opinion as to guilt, and

16

the second statement was, "They (the respondent and his counsel) said they hope that you find him not guilty. I quite frankly think that they hope that you find him guilty of something a little less than first-degree murder." *Id.* at 640. The court gave an instruction that the latter remark was not evidence and that the jury should consider the case as though the statement had not been made. *Id.* at 641. On appeal, the state court determined that the remark was improper but held it "was not so prejudicial as to require a mistrial" and further stated the "trial judge's instruction was sufficient to safeguard the defendant's rights." *Id.* Despite this decision and the district court's decision denying the writ of habeas corpus, the Court of Appeals concluded the comment "was potentially so misleading and prejudicial that it deprived respondent of a constitutionally fair trial." *Id.* The Supreme Court reversed the Court of Appeals, concluding the incident did not make the respondent's trial "so fundamentally unfair as to deprive him due process." *Id.* at 645.

In *Darden v. Wainwright*, 477 U.S. 168 (1986), an issue arose concerning a prosecutor's statement in closing argument. On direct appeal, the Florida Supreme Court affirmed the conviction and sentence. *Darden*, 477 U.S. at 170. Although the Florida court disapproved of the closing argument, it reasoned the law "required a new trial 'only in those cases in which it is reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt . . . or in which the comment is unfair.'" *Id.* (quoting *Darden v. State*, 329 So.2d 287, 289 (Fla. 1976)). The Florida court thus concluded the comments had not rendered the petitioner's trial unfair. *Id.* at 170-71.

The petitioner then sought federal habeas corpus relief, but the district court denied the petition. *Id.* at 171. The Eleventh Circuit denied relief, and the Supreme Court affirmed the order of the Eleventh Circuit. *Id.* The Court described the comments at issue:

17

> Several comments attempted to place some of the blame for the crime on the Division of Corrections, because Darden was on weekend furlough from a prison sentence when the crime occurred. Some comments implied that the death penalty would be the only guarantee against a future similar act. Others incorporated the defense's use of the word "animal." Prosecutor McDaniel made several offensive comments reflecting an emotional reaction to the case.

*Id*. at 179-80. The Court stated,

> These comments undoubtedly were improper. But as both the District Court and the original panel of the Court of Appeals (whose opinion on this issue still stands) recognized, it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 669 F.2d at 1036. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id*. at 642.

*Darden*, 477 U.S. at 180-81. The Court agreed with the district court and concluded that Darden's trial was not fundamentally unfair. *Id*. at 183. The Court stated, *inter alia*,

> [W]e agree with the reasoning of every court to consider these comments that they did not deprive petitioner of a fair trial. The prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent. Much of the objectionable content was invited by or was responsive to the opening summation of the defense. . . . The trial court instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence. The weight of the evidence against petitioner was heavy; the overwhelming eyewitness and circumstantial evidence to support a finding of guilt on all charges reduced the likelihood that the jury's decision was influenced by argument.

*Id*. at 181-82 (internal quotation marks and citations omitted).

As the Magistrate Judge noted in his R&R, the Fourth Circuit has listed several factors to use in determining whether a prosecutor's comments were so damaging as to require reversal:

> (1) the degree to which the remarks misled the jury and prejudiced the defendant;

> (2) whether the remarks were isolated or extensive;

18

(3) whether absent the remarks, competent evidence established guilt; and

(4) whether comments were deliberately placed before the jury to divert attention to extraneous matters.

*United States v. Harrison*, 716 F.2d 1050, 1052 (4th Cir. 1983). The strength of the evidence against the defendant or petitioner is one of the factors the court must consider in determining whether reversal is required. *See Williams v. Zahradnick*, 632 F.2d 353, 364-65 (4th Cir. 1980) (noting the court was unable to conclude the error did not affect the jury's verdict when (1) the prosecutor made four references to the appellant's silence, "the clear purpose of which was to impeach his alibi through the introduction of his silence as substantive evidence of guilt" and (2) the alibi "was neither transparently frivolous nor uncorroborated"); *id.* at 364 ("'[T]he weakness of the evidence makes it impossible to view the prosecutor's comments on . . . silence as harmless error, as we might do were the evidence stronger.'" (quoting *United States v. Edwards*, 576 F.2d 1152, 1155 (5th Cir. 1978)); *see also Lyons v. Lee*, 203 F. Supp.2d 512, 552-53 (M.D.N.C. 2002) (concluding the state court's adjudication of the claim that the prosecutor's argument during the penalty phase denied the petitioner due process of law was not contrary to or an unreasonable application of *Donnelly* or *Darden* when (1) the prosecutor's arguments did not manipulate or misstate the evidence; (2) the statements did not implicate other specific rights of the accused; (3) the trial court instructed the jury to decide the case on the basis of the evidence alone; and (4) the weight of the evidence against the petitioner was overwhelming).

The Magistrate Judge carefully reviewed the evidence against Primus and the decision of the Supreme Court of South Carolina in reaching his conclusion that the state court decision was not contrary to, nor an unreasonable application of, clearly established federal law. The Supreme Court of South Carolina concluded there was overwhelming evidence of Petitioner's guilt, and that

determination is not an unreasonable determination of the facts. While the court will not recite all of the evidence against Petitioner, it is worth noting that the victim identified Primus as her attacker, and she testified that she had known Primus for seven years and had even been on a date with him in the past. Both she and Primus had injuries consistent with her version of the events, and Primus' fingerprint was found on a doorknob of the abandoned home where the victim stated the attack occurred. Furthermore, the victim testified that she found a stick and that she jabbed Petitioner in the eye and chest with that stick and ran to a nearby home. A wooden stick was found at this home, and a SLED serologist testified that one end of the stick contained blood consistent with the victim's DNA profile while the other end of the stick contained another's blood. The serologist testified that the Petitioner could have been the donor of this other blood, testifying that in testing the population at random, 1 out of 174 people would match the two-point DNA profile on the blood found on that end of the wooden stick.

In light of the overwhelming evidence against Petitioner and  the fact that the judge instructed the jury that it could not consider Primus' decision not to testify, the Magistrate Judge correctly determined that the Supreme Court of South Carolina's decision was not contrary to, nor an unreasonable application of, *Donnelly* or *Darden*. (*See* R&R at 24.) Primus' objection is without merit.

Petitioner next objects to the Magistrate Judge's recommendation with respect to Grounds Two and Four. (Objections at 3.) Petitioner states, "Does the constitutional arm of the [F]ifth Amendment extend to whether or not [P]etitioner was tried under a lawful indictment for ABHAN? Was an indictment for ABHAN presented to the grand jury and returned true billed?" (*Id.*) Petitioner's objection is without merit, however, as both Ground Two and Four concern the state

court's subject matter jurisdiction, a claim which is not cognizable on federal habeas review.  *See Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998) ("It is black letter law that a federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.  Because Wright's claim, when pared down to its core, rests solely upon an interpretation of Virginia's case law and statutes, it is simply not cognizable on federal habeas review." (internal quotation marks and citations omitted)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Next, Primus objects to the Magistrate Judge's recommendation with respect to grounds four and eight.  Primus states,

> Petitioner requested that his attorney present his uncle as a witness at trial.  This request was denied.  At the PCR hearing [P]etitioner's counsel stated that this was a tactical decision.  Petitioner argues that he had the ultimate authority to make this fundamental decision regarding his case.  See Mulligan v. Kemp, 771 F.2d 1436; and that counsel was only an assistant; they were partners in terms of planning the defense.  More importantly it was petitioner who faced the loss of his liberty.

(Objections at 3-4.)  While Petitioner may have desired his uncle to testify at trial, the uncle did testify at the PCR hearing and indicated that Primus visited him on the day of the crime, arriving at around 10:00 a.m. and leaving around 1:00 or 2:00 p.m.  Because this testimony would not have given Petitioner an alibi for the time of the crime, the state court determined that Primus could not show prejudice pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  The Magistrate Judge correctly determined that Primus could not show the state court's determination on these two grounds was contrary to, or an unreasonable application of, clearly established federal law.  Petitioner's objection is without merit.

Primus' last objection is to the Magistrate Judge's recommendation that Respondent's Motion for Summary Judgment be granted with respect to grounds 1-3, 5-7, and 9-15.  (Objections

at 4-7.)   Petitioner explains that he had "no say in what his counsel considers frivolous or

meritorious" on appeal and through the post-conviction relief process, and he states that the *Anders*

brief works "to the appellant[']s disadvantage because issues in the review are not [enumerated] and

preserved for further proceedings."   (Objections at 4.)   He states (verbatim),

> Petitioner feels that all issues that the State of South Carolina and the United
> States Magistrate Judge state are procedurally bypassed or barred should be given
> a chance to be presented to the courts of South Carolina for consideration.  In other
> words that this court grant a request for leave to seek a continuance while [P]etitioner
> pursues his unexhausted claims in state court.  *See Collins v. Lockhart*, 707 F.2d 341,
> 344 (8th Cir. 1983).  Hence holding this petition for habeas corpus relief in abeyance
> pending the outcome of these claims in state court.

(*Id*. at 6.)

Although Primus appears to read the Magistrate Judge's recommendation as determining that

grounds 1-3, 5-7, and 9-15 are unexhausted, Magistrate Judge Rogers recommended granting

Respondent's Motion for Summary Judgment on these grounds because these grounds are

procedurally defaulted.  (*See* R&R at 27-29.)  In *Hughes v. South Carolina*, 444 F. Supp. 2d 594

(D.S.C. 2006), the Magistrate Judge found in his R&R that because the petitioner did not "present

the issue of ineffective assistance of counsel at his PCR hearing, he has not exhausted his

administrative remedies and this court may not adjudicate his claim" pursuant to § 2254.  *Hughes*,

444 F. Supp. 2d at 597.   In his objections, the petitioner argued that he did raise the issue of

ineffective assistance of counsel at the PCR hearing and in his application for PCR, and he further

claimed the issue was raised in the state appeal to the South Carolina Supreme Court.  *Id*.  The court

noted that while his *petition* did allege ineffective assistance of counsel, the record shows that he

"did not pursue this claim at the PCR hearing, nor did he pursue any such claim in his PCR appeal."

*Id*.  The court stated,

> In South Carolina, [p]etitioner's failure to pursue the remaining claims at the PCR hearing constitutes abandonment of the claims, and the claims are thereafter procedurally barred. S.C. Code Ann. § 17-27-80; *see Plyler v. State*, 309 S.C. 408, 424 S.E.2d 477 (1992) (finding an issue that was neither raised at the PCR hearing nor ruled upon by the PCR court procedurally barred). Accordingly, as the R&R correctly concluded, this court is procedurally barred from considering the [p]etitioner's claim of ineffective assistance of counsel.

*Id.*

> Section 17-27-90 of the South Carolina Code states,

> All grounds for relief available to an applicant under this chapter must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended application.

"Any issue which could have been raised in the initial state PCR action cannot be raised in a second PCR action." *Wilson v. Moore*, 999 F. Supp. 783, 789 (D.S.C. 1998) (citing *Arnold v. State*, 309 S.C. 157, 420 S.E.2d 834, 842-43 (1992)). An applicant cannot "circumvent this rule and file a successive application 'on the ground that his first complete PCR application was insufficient due to ineffective PCR counsel.'" *Id.* (quoting *Aice v. State*, 305 S.C. 448, 409 S.E.2d 392, 393 (1991)).

In the case *sub judice*, Primus had a direct appeal, and although the Court of Appeals of South Carolina denied certiorari with respect to his PCR application, he did appeal the denial of that application. Because Primus could have raised all allegations concerning ineffective assistance of counsel in his PCR proceeding but did not do so, he is procedurally barred from doing so now. Because holding this matter in abeyance will not serve any purpose, the court denies Primus' Motion for Continuance and Leave of Court to Pursue Unexhausted Claims in State Court and concludes his objection is without merit.

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Petitioner's Motion for Continuance and Leave of Court to Pursue Unexhausted Claims in State Court is **DENIED**. It is further **ORDERED** that Respondent's Motion for Summary Judgment is **GRANTED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**May 27, 2008**

## NOTICE OF RIGHT TO APPEAL

Petitioner is hereby notified that he has the right to appeal this Order within thirty (30) days from the date hereof, pursuant to Federal Rules of Appellate Procedure 3 and 4. *See* Fed. R. App. P. 3-4.